Case number 22-3793, United States of America v. Charles ONeill, oral argument not to exceed 15 minutes per side. David Klukas for the appellant. You may proceed. Good morning. Good morning, your honors. May it please the court, David Klukas on behalf of appellant Charles Brian ONeill, and if I could, I would like to reserve three minutes for rebuttal. Thank you. At issue here, your honors, are two separate search warrants related to this case. The first search warrant occurred at Mr. ONeill's residence in Fostoria, Ohio. When the court examines the probable cause affidavit supporting this search warrant and strips it of its boilerplate and its reckless falsehoods, what is left is an allegation of several images of nude or partially nude boys. The affidavit provides no further description. The record doesn't indicate that anybody asked any questions regarding what the images depicted other than represented, and it's unclear whether the affiant officer even asked or looked at the images himself. If you have more of your opening, I'll let you ask a question about what your client reserved the right to appeal. So you said there's two different search warrants here. The plea agreement as to both counts one and counts two says that your client pleads guilty, conditioned on the reservation of his right to appeal the denial of his motion to suppress document 63, which ruling document 79 incorporates certain other orders, to the extent that those rulings were relied upon in the ruling denying the aforementioned motion to suppress. That motion to suppress, doc 63, is the motion to suppress evidence obtained from the barn. So why is both the barn and the house at issue here and doesn't make any difference? I do believe it makes a difference because there's some subtle differences between the two searches, search warrants. Right, but what about the evidence recovered? Are there more than 650 images from the barn? Because that would take you to the max of the guidelines. No, what, are there more than 650 images? I don't believe there were more than 650 images, but I believe what's recovered from the barn was the basis for the exploitation. Okay, so I don't know what- I concede that your client reserved his right to challenge all the evidence found in the barn. What about the house? We believe that although not a model of clarity, that the reference in the conditional guilty plea reserving the right to challenge the search of the barn and the related documents, I think Judge Carr relied on his decision in denying the motion to suppress. And so we think that that is sufficiently interrelated so that both search warrants are before the- But it says, incorporates by reference certain findings and orders set forth in other rulings made in this case, that is with respect to the search of the house, which defendant intends to appeal to the extent said rulings were relied upon in the ruling denying the aforementioned motion to suppress, the aforementioned being the barn. So you're just saying to the extent he made mistakes with respect to the search warrant for the house and used those rulings with respect to the barn, the barn, we get to challenge that because- But only, you've only reserved your right to challenge what was found in the barn, not the house. I'm not in a position to disagree with the court in that it is not, it should have been in that plea agreement, we're going to challenge the ruling for the search on the barn and we are going to challenge the ruling on the search of the house. That would have been the more complete method of preserving the ruling. It's our belief that because there's interrelated findings, both legal and factual, for both of the two searches, that there's a plea agreement adequately protects and permits Mr. O'Neill to challenge both. I mean, Rule 11A2 says you must reserve in writing with the consent of the court and the government a specified pretrial motion and we've been pretty stingy about that in our case law. I understand that. So if only the barn is at issue here, let's just say, does that matter for your client? In other words, were there things that were recovered from the house that put him in more legal jeopardy than the things recovered from the barn? Because the barn is the exploitation charge, that's the big ticket item. Correct. So there are things recovered from the house that do put him in jeopardy. Although I think when compared to the exploitation and how the exploitation factored into the ultimate sentence, I don't know that it would have made a huge difference. But the literal answer to the court's question is yes, there was material recovered from the house that was referenced in the relevant conduct in the PSR and was a factual basis for the guilty plea. So the answer is yes, there was material recovered from the search of the home for which Mr. O'Neill was ultimately sentenced. So things, statements that were submitted to obtain the first search warrant, the second search warrant referenced the information from the prior search warrant. In other words, would the search warrant for the barn have been granted, do you think, if it was stripped from, if all of the statements in support of the first search warrant were not available in support of the search warrant for the barn? I have to ask Your Honor a question. So in the affidavit I consider there to be two separate kinds of statements. There's seven paragraphs of factual allegation made by the officer and then several paragraphs of boilerplate. Contained in that boilerplate is a false allegation. So if you take the first seven paragraphs out and look at the remainder of the search warrant for the barn, I don't believe that a search warrant would have issued. I don't think there's anything left on which to find probable cause, number one. And number two, you still have the recklessly false and misleading allegation of accessing child pornography on the peer-to-peer network. So I believe the answer to that question would be no. If you took out the material that was relied on for the first search warrant, what you have left is insufficient to establish probable cause and includes recklessly false information on which the magistrate relied. Okay. The district court seemed to take the position that the false statements regarding the peer-to-peer network was not material and or was not willful. So if you disagree with that statement that it wasn't material and or was not willful, then I'm going to be very careful. What would be the basis for your saying that? I believe that it is an exercise in a reckless disregard for the truth. I think what happened here is that they didn't read their affidavit. That both of these officers are supposedly trained in this area of the law and with that training comes the recognition of the significance of the utilization of a peer-to-peer network for the exchange and viewing of child pornography. So the position of Mr. O'Neill is that this is a boilerplate inclusion that didn't get proofread, didn't get recognized, and more importantly for the Bairdstown Road, the Wood County search warrant, that affiant knew that it was in there and she knew that it was incorrect and she left it in there anyways, which we think is a good illustration of a reckless disregard of the truth. So I mean failure to proofread is certainly not willful conduct, right? I mean you just said it was failure to proofread. I believe it is. Wouldn't you have to characterize it as something else? That's negligence. Sure, okay, so that's negligent. I would agree with that. But I guess, you know, I think there's some responsibility on the part of a requesting officer to look over the material that you've sworn to before you... I don't disagree. It's just that the standard is, you know, that it has to be willful. I think that there are cases that represent or that stand for the proposition that it's also grossly negligent. We would consider this to be grossly negligent because of the significance of the inclusion. This wasn't just some standardized boilerplate phraseology. Okay, the significance of the... But if you're failing, I mean if you're just failing to proofread, you're not going to see, you're saying you should pick out the important words, but the point is you didn't proofread it, so you didn't see any of the words. Right, and so, but I guess what I'm saying with respect to materiality, so what Judge Clay had asked was about how Judge Carr had factored this piece of information in, and I think it's important to emphasize that this particular piece of information carries considerable weight in the probable cause matrix because, I mean, this is an exercise in file sharing of child pornography and it is often present in child pornography cases. And so I think it's not just the grossly negligent failure to proofread in its entirety, but where this allegation fits in and the significance that it has in the probable cause inquiry, on behalf of Mr. O'Neill, makes this even more grossly negligent because this is a really significant inclusion that everybody agrees is false. Yeah, let me ask this question. With respect to the search of the barn, so let's just say we have the first, we have the information in the second warrant that includes the search includes reports from the wife and the son about thousands of photographs of naked children, and then the son goes to the barn and he opens the barn. This isn't, the district court didn't rely on this, but this is in the affidavit. So in the room in the barn, they found a computer tower with a monitor, computer disks, blank unused disks, vibrators, sex toys, condoms, children's clothing and costumes. So if you have all of that, children's clothing, costumes, vibrators, computers, blank disks, and the information that the wife and son found, thousands of naked, but maybe not, naked pictures of young boys, but not, maybe they're not child pornography, isn't that probable cause to search the computer in the barn? I think it's a little closer to probable cause than what they had for the house, but I don't think that it's probable cause so that they, so that a magistrate could determine that there is a fair probability that evidence of child pornography would be there. On that computer in the barn? Not good faith. I don't think you could do that in conjunction with the peer-to-peer. I don't think you can separate the allegation of the peer-to-peer. But we cross out peer-to-peer. I don't care about peer-to-peer. What I've got is thousands of images of naked boys on the computer. I'm going to concede that they're not child pornography. They're just, but it's a big collection. And in the barn, a computer, blank disks, vibrators, sex toys, condoms, children's clothing and costumes. So you don't think there's probably child pornography on that computer? I don't think that the things that the court has just cataloged up to the clothing is enough by themselves. Up to the clothing, but you include the costumes and the clothing? I mean, what are we doing with the children's clothes and the costumes? I had indicated in response to Your Honor's question that you're getting closer to probable cause, okay? I acknowledge that you're getting closer, but I don't believe that it's there. How do things get closer to probable cause? Because the items that Judge Lawson just enumerated are legal items. I mean, how does that get us close to probable? I mean, you're the advocate for your client. If you say it gets us closer, I'll take your concession for that, but I'm just wondering why you're saying that. Here's why. This is why I would say that. So I agree with Your Honor that all of the items up to, when they're talking about the clothing, are legal. I mean, even sex toys and condoms, those are not illegal. Exactly. And that's why, even though I say it may be a little closer, I stand on the proposition that it's not there, okay? But wait. We see this in drug cases all the time. If you have scales and baggies and cash and guns, all of those are legal. But do you think maybe they're dealing drugs for that outcome? I think that that is not necessarily the most accurate analogy, because what Judge Clay had referenced and what was referenced in the affidavit have uses far beyond the scope of child pornography. But it isn't. It's called probable cause. It's not proof. We just need reasonable suspicion to believe that the search of the place will reveal evidence of a crime. We don't have to have proof of the crime. I understand that. I guess my point is this. The things that are referenced in the Bardstown affidavit, the condoms, the vibrators, the sex toys, okay? Children's costumes. In the room with the computer and the blank disc. They're all in the room together. I'm also trying to respond to Judge Clay, okay? The vibrators, the condoms, the computers. Those have uses far beyond the scope of what's being investigated. Your Honor's analogy with respect to the drug cases, okay, it's a lot more difficult when you have your scale and your gun and your baggies all sitting together to say that I'm using that for something else, okay? All of those other things that are in the Bardstown Road affidavit are legal, have uses well beyond what was being investigated here, and don't really lend themselves to the same comparison I think that Your Honor's making. Why don't we hear from the government and get your full rebuttal. Thank you. Good morning, Your Honor. It's Frank Spryzak on behalf of the United States. May it please the Court. The government's position in this case kind of focuses on two major issues, one of which is that there was no intentional or reckless misconduct in this case. The second would be that it was reasonable for the officers to rely on the issuing magistrate's decisions. And focusing first on the intentional and reckless misconduct, the only evidence in this case related to recklessness would be the, within the record would be supported by the declarations offered by Officer Bryan and Sergeant Berta. And in those declarations they clearly indicated that, conceded that they had made some errors in terms of the facts that were on the affidavit. However, those errors were unintentional. And to Judge Larson's point regarding proofreading, I think focusing on the second affidavit primarily, if you examine the differences between that affidavit versus the first affidavit offered by Officer Bryan, it's clear that Sergeant Berta did engage in some proofreading but happened to miss the portion regarding the peer-to-peer network reference. I mean, that's a pretty significant thing to overlook, right? Because that is how child pornographers share their stuff, right? That is how they share their stuff if they're engaged in sharing. If it's in a circumstance where you have an individual that's... But it would make you more likely to think, oh, this is probably somebody who's trafficking in child pornography because we know that's how they do it. So it's kind of a significant thing to overlook, right? Well, correct. And the government is not making an excuse for that. Obviously this was an error that shouldn't have occurred. But there's a difference between negligence and gross negligence and recklessness. And if you look at the second affidavit in particular, there were additions that were made that referenced the interview of the appellant by the Officer Bryan where he stated that he did possess pictures of children in various costumes. You have the reference to the items that were recovered within the barn that she changed even one in particular to when she was cutting and pasting from Officer Bryan's affidavit, there were sections where he would type in I when referring to himself, and she would go and switch that from I to Officer Bryan. So she did make an attempt to make some changes. However, unfortunately, she did overlook the peer-to-peer network reference within the affidavit. However, if you excise that particular portion from the affidavit, the government still believes that there's an addition of probable cause based upon the totality of the circumstances and all the other information that's contained within the affidavit, first and foremost. I'm just curious, one thing about this case that I'm surprised I didn't know the law on, and I'm just curious what you would say the law is, take everything out of the case except just photos. Is there some threshold of amount of photos of nude children of a very young age where you're allowed to say that creates an inference of child pornography or you're kind of stuck with the possibility that, no, if you don't actually examine them and find that actually something that really is obscene really counts, until you do that, you can't say probable cause? I mean, is the court kind of sorted out how that works, not at the Leon Goodfay stage, but at the probable cause stage? Your Honor, I recognize that, and I apologize for not recalling the specific case site from Judge Carter's opinion, but he did reference a site indicating that just numerous photos in and of itself is not sufficient. That's out-of-circuit case law, right? That comes from, I think, the Tenth Circuit. What's the rule? What should be the rule? I mean, I'm a little puzzled by this, that you really have to have findings. Well, here's one that actually counts. I mean, I get it that in one sense it's easy. It's not like a lot of other probable cause things. They have it, but I just wasn't aware. I guess I had this intuition that there'd be some number beyond which you say, well, that's not a conventional thing to be doing. You're allowed to draw an inference. Let me interrupt. I believe in this circumstance, Your Honor, there's a difference between viewing the images and not viewing the images. So if you have an officer that's not viewing the images and hasn't viewed them, and it's conveyed to him or her, there's over a thousand images of naked male children, various age groups. In that circumstance, I think it's reasonable to infer that there's at least one that crosses the line and falls under the category of child pornography. Didn't the son himself describe them as being obscene? Yes, he did describe them as being obscene. And I think the other portion to the fact that I take into consideration is he reports this to his mother, the appellant's wife views the images, and then even double-checks herself, again the next day when he's in the shower, the appellant that is, views the images again to confirm that there's over a thousand images. And not only that there's over a thousand images, but they're separated into two separate folders. Does this case have a police officer who viewed the images and made a determination prior to the search warrant, and made a determination that the images were not just of children and not just of unclothed children, but were obscene, and the officer was willing to make that representation that these were child pornography images. Do we have, we don't have that in this case, do we? We do not have that in this case, Your Honor. We do not have a, Officer Bryan did not view the images ahead of time. He was relying upon the information that was conveyed to him by the appellant's wife and the appellant's son through the appellant's wife. Now from the standpoint of the requirements of the First Amendment, images of unclothed children, unless there's an undue focus on the children's genitals or some other problem, images of unclothed children in and of themselves don't necessarily constitute pornography under the First Amendment. You'd agree with that, wouldn't you? That's correct. All right. However, the, it's, again, our position is not just the images of itself, it's the totality of the circumstances. You know, if we look at the exam and just the images in a vacuum. Well, the circumstances dwindle when you take out the peer-to-peer network as a basis for the search warrant, and here we've got false statement because there's no doubt that from a standpoint of materiality that the peer-to-peer network would have been very supportive of the granting of the search warrant, and you don't have that here. In fact, that consideration waves in the other direction since there were false statements regarding the existence of this peer-to-peer network, and those statements were false. So what really do you have here except the wife and the son going to the cops and saying that we, that dad has a lot of pictures and we're troubled by that, and then seemingly the investigation subsequently that led to the search warrant was quite inadequate? Well, Your Honor, I think initially if you look at the report from the appellant's wife and son, I think it's important to take into consideration, you know, these are civilians that don't work in law enforcement, so they see these images, they're troubled by them, and based upon their view, they deem them to be obscene. Well, because these are lay people and the officers don't have any reason to know that they have any expertise in recognizing pornography, the officers should take that into account, don't you think? I think the... Before they go off half-cocked and start issuing out search warrants based on templates from other search warrants and false statements and all that sort of thing. Well, Your Honor, I think there's a couple of things to take into consideration here. In order for a search warrant to be invalid for false statements, again, there needs to be some showing that it was knowing and intentional, and additionally... Or things can be so grossly negligent that it amounts to willfulness. And that's what I was going to get to, Your Honor. In this circumstance, I think if you compare, you have a circumstance where in the first search warrant, you have a reference to a conviction which was inaccurate, and you have the reference to the peer-to-peer network. Outside of that, we don't have any falsities. So this isn't a circumstance where you have an affidavit that's riddled with errors. There's no evidence that there was an intention on behalf of Officer Bryan with the initial warrant to provide inaccurate information to the court. Contrary, they did the right thing in this circumstance by attempting to... Or to seeking the search warrant. They very easily could have asked the appellant's wife, look, you have access to the phone, show us what you're talking about. They didn't do that. So in this circumstance, they did take the right steps and attempted to get a search warrant and do things legally. And based upon the fact that the magistrate issued the search warrant in front of probable cause, they could objectively rely on that. Now, the other factors that come into play outside of the images simply being of nude children, which is what was conveyed to Officer Bryan, again, you have over a thousand images that are separated into folders, and I don't think you can take that lightly because... What does the separation of folders indicate? That's a collection. So you have a circumstance where you have an individual that's an indicia of a collector. And if you look at a separate portion of the affidavit, there's a nexus... But folders, what do you mean? Like categorizing? Or I don't know... I think saving them into specific locations as opposed to just having... It's not a circumstance where you're going to have... There's no evidence of accidental downloads that are just on the computer. This is something where you'd have to physically take the files, download them, and place them into separate locations on the computer. I'm following your point there, because different folders can be generated simply because batches of images are being taken or collected at different times. There can be an innocuous explanation for the different folders just that innocuous. I'm not sure why you're saying that there were different folders as significant. Yeah, come to think of it, my iPhone just pulls together my own photos and suddenly I've got like this montage with music set to it, and it just goes off. Like I haven't touched any of it. So, I don't know. But that would be a collection of the montage, correct? By the computer. It's amazing that I can even take a photo with the iPhone. I promise you I do not know how to put it in folders. And yet, they're collected. There's landscapes. There's family type people ones. So, who knows how this happened? But again, even if we were to look at it and say, fine, that the folders could have been created on their own, there's still a circumstance where we're talking about over a thousand images that this individual would have to download on his own. And isn't the rationale for, I mean, this isn't the line between what's pornography and what's obscenity in the adult context. Because there, the concern is we don't want to chill speech. We don't want to chill protected conduct of adults. But the rationale on the child's side is not that, right? The rationale on the child's side is protection of exploitation of children, right? So, we have a different rationale, and I think this goes to Judge Sutton's thousand images point. Like, we know these, we can infer that these aren't family members. Because the wife and the son were alarmed, so they didn't think, ah, this is just a thousand kids of cousin Jimmy in the bathtub. So, doesn't that help your case a little bit? Like, aren't we worried that about a thousand naked images that those kids are being exploited, whether or not it crosses the line? I think it absolutely helps the case, Your Honor. And to your point, you know, if these images were of family members, we wouldn't be here today. There's no evidence that these were innocuous images of children having their diapers changed. There's no evidence that Mr. O'Neill has any, or there was any artistic value to the images. Can I put the point this way? So, we agree that there's a First Amendment right to collect adult pornography. The First Amendment right to collect child pornography, what's obscene and what's not is going to be a little different. Are police allowed to be a little more concerned about child pornography when there's a thousand images as opposed to adult pornography when there's a thousand images? Absolutely, based upon the societal interest in protecting children, Your Honor, yes. Is there a case that says that? The, I don't know that I can offer. Are you saying that those thousand images were all principally child pornography images? I'm not saying that they all were. Well, Judge Sutton's question was predicated on the thousand images being child pornography. I haven't seen in the case anywhere where there's any evaluation or adjudication that those were all, or even most of them, or maybe not even any of them was child pornography. No, no, I led us down the wrong road by using the phrase child and adult pornography where I think the First Amendment protects both even though they're pornography. So, I should put it slightly differently. A thousand adult naked pictures, a thousand child naked pictures, no label on them. I guess my instinct is there's a difference when it comes to the probable cause calculation and a thousand child naked pictures is different from finding a thousand adult naked pictures when it comes to the possibility of probable cause for obscenity and child pornography. Correct, and that's the government's position and to answer your question regarding whether there's a case. I don't have a case on point, Your Honor, but if I would have permission to provide a supplemental authority after argument, I would be willing to do so. Okay, that's great. We'll hear from Mr. Klukas and his rebuttal. Thank you very much. Thank you, Your Honor. Do you think there's a difference between those two settings? I'm sorry, the number? A thousand images of naked children, a thousand images of naked adults. Does one create more probable cause of a crime than the other? No, not with any, without any further description or indication as to what the child image is. How about it's clear in both settings they're not family members? No, I don't think that, because what matters... A thousand non-family members. Correct, a thousand. So, Judge Carr found that there was no probable cause here and it's clear from this morning that there's some question on the part of the court here as to whether that decision was correct or not. And I don't really recall in the government's brief them contesting that finding, that really the arguments had all been limited to the appropriate application or not of the good faith exception. I don't know that there's anything here in front of the court for them to undo Judge Carr's finding of no probable cause. I mean, I know that it's reviewable as long as... It's obviously a predicate to the Leon good faith, right? Correct, correct. So, whether the court would agree or not, I do not believe that without any further description and even with them not being relatives, that provides probable cause, what the Judge Sutton indicated for child pornography. And with the barn, which is the only thing maybe that you reserved the right to appeal, we have all the other stuff. I don't think... I'm more inclined to agree with Judge Clay. All the other stuff is legal and not indicative of child pornography. Let me finish. And if the court is concerned about the costumes, I mean, there are people that take pictures, portraits of children. You don't know anything more, okay? And so, while I understand what Judge... Well, but I do because I've got a thousand naked pictures of children. And then I've got sex toys, costumes, a computer, computer disks, all in the same room. I... Add those two things up. I can only suggest that Your Honor is putting greater probable cause emphasis on... Good faith. No. Here's why. Good faith is not a place... Because they've misled the magistrate, okay? Right. So, your whole case rests on the peer-to-peer and the conviction, the argument that he was convicted of these crimes, those minor violations. I don't even remember what they were. Oh, no. No, no, no. No. You're not worried about that? I am not worried about the priors at all. I think that really is an exercise in inadvertence. We didn't brief it. Got it. Okay. It's the peer-to-peer. It's the not knowing the law, okay? That mere nudity, okay, is not illegal. And I don't think that it's asking a whole lot for an officer's involved and engaged in the investigation of this sort of offense to know what's legal and know what's not legal. I don't think that's asking too much. I think Leon, in fact, insists that the officers have a reasonable knowledge of the law that they're in, the crimes that they're investigating. And I think we referenced the Fourth Circuit case, Doyle. Were they held? You should know the difference. I don't think that's asking too much. So, thank you so much for the rebuttal. Thank you. Great. Thanks to both of you for your helpful briefs and oral argument. We really appreciate them. Mr. Klukas, I see you're court-appointed counsel. We're really grateful for your service, and Mr. O'Neill's lucky to have you. So, thank you very much. Case will be submitted, and the clerk may call the next case.